905 F.2d 355
 53 Fair Empl.Prac.Cas. 677,
54 Empl. Prac. Dec. P 40,038
Winston NASH, Plaintiff-Appellant,
v.
The CONSOLIDATED CITY OF JACKSONVILLE, DUVAL COUNTY,
FLORIDA, a municipal corporation, Defendant-Appellee.
 No. 87-3360.
 United States Court of Appeals,
Eleventh Circuit.
 July 9, 1990.
 
 Winston Nash, Jacksonville, Fla., pro se.
 William Lee Allen, Thomas E. Crowder, Steven E. Rohan, Asst. Counsels, Jacksonville, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 ON REMAND FROM THE UNITED STATES SUPREME COURT
 Before VANCE* and HATCHETT, Circuit Judges, and OWENS**, Chief District Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this civil rights action, we reverse the district court's ruling that the City of Jacksonville's (Jacksonville) examination for the promotion of firefighters does not discriminate on the basis of race, in violation of Title VII. This court has twice before considered this case. On both occasions, we reversed the district court's judgments in favor of Jacksonville. Nash v. Consol. City of Jacksonville, 763 F.2d 1393 (11th Cir.1985) (Nash I); Nash v. Consol. City of Jacksonville, 837 F.2d 1534 (11th Cir.1988) (Nash II ). In the latest case, Nash II, the United States Supreme Court remanded the case to this court for consideration in light of its holding in Wards Cove Packing Co. v. Atonio, --- U.S. ----, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Having considered Wards Cove and finding that it does not directly affect this case, we again reverse the district court and remand with instructions.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 A detailed account of the facts of this case is given in Nash II. 837 F.2d at 1535-36. We restate only those facts relevant to this stage of the appeal.
 
 
 3
 Jacksonville administers a written examination to firefighters seeking promotion. For promotion, firefighters who score 70 or higher on this examination are ranked on the basis of their individual scores and the amount of time each has worked for the fire department.
 
 
 4
 Winston Nash, a black fire engineer, in the Jacksonville Fire Department, applied for promotion to Fire Lieutenant (combat) in 1976, 1978, and 1981.[1] Because Nash scored 69 on the examination in 1978 and 69.072 in 1981, he has not been eligible for promotion.
 
 
 5
 In March, 1983, Nash filed a complaint for injunctive relief alleging that the examination has a disparate impact on black persons in violation of Title VII of the Civil Rights Act of 1964 and other laws.[2] At trial, witnesses for Jacksonville testified that supervisory skills are the primary qualification for promotion to fire lieutenant. These witnesses also admitted that the written examination fails to test supervisory skills. Jacksonville did not offer the examination for admission into evidence at trial.
 
 
 6
 After examining statistical evidence on the relative performance of blacks and whites on the examination, the district court found that Nash had established a prima facie showing of discrimination against nonwhite examinees. Jacksonville does not contest this finding on appeal.[3] The district court, despite not having seen the examination, nevertheless found that the examination is content-valid and job-related, and entered judgment for Jacksonville.[4]
 
 
 7
 In Nash I, we held that the district court had improperly placed the burden of persuasion as to content-validity on Nash. In reversing the district court and remanding, we also expressed our "wonder that any court should attempt to determine whether a written examination was 'job-related' or 'content-valid' without having before it the questions asked of the applicants." 763 F.2d at 1398.
 
 
 8
 On remand, the district court again entered judgment for Jacksonville without reviewing the examination. In Nash II, we again reversed, rejecting as clearly erroneous the district court's finding that the City had met its burden of articulating that the test was either job-related or a business necessity. We also instructed the district court to enter judgment for Nash, and remanded for calculation of damages. Following its opinion in Wards Cove, the Supreme Court vacated our holding in Nash II and remanded the case for consideration in light of its opinion. --- U.S. ----, 109 S.Ct. 3151, 104 L.Ed.2d 1015.
 
 II. DISCUSSION
 
 9
 In Wards Cove, the Supreme Court restructured the familiar three-step analysis for Title VII disparate impact claims by announcing a two-phase approach. Wards Cove involved a class action under Title VII brought by a group of minority workers against two companies that operated salmon canneries in Alaska. The district court entered judgment for the employer on all claims, and the employee class appealed. Sitting in banc, the Ninth Circuit held, among other things, that "[o]nce the plaintiff class has shown disparate impact caused by specific, identifiable employment practices or criteria, the burden shifts to the employer" to prove the business necessity of the practice. Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1485 (9th Cir.1987).
 
 
 10
 In its review of Wards Cove, the Supreme Court issued three separate holdings. First, the Court found that the particular statistical evidence relied upon by the Ninth Circuit was not sufficient to make out a prima facie case of disparate impact. In Wards Cove, the class offered statistical evidence showing a high percentage of nonwhite workers in the unskilled cannery jobs and a low percentage of nonwhite workers in the skilled noncannery jobs. While noting that statistical proof can alone make out a prima facie case, the Supreme Court held that the statistical evidence offered in Wards Cove was insufficient because "[t]he 'proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition of the qualified ... population in the relevant labor market.' " Wards Cove, 109 S.Ct. at 2121 (quoting Hazelwood School District v. United States, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977)).
 
 
 11
 The statistical evidence presented in this case does not suffer from the defects the Supreme Court identified in Wards Cove. Specifically, the statistical evidence Nash introduced did not involve a comparison between the racial composition of lieutenants in the Jacksonville Fire Department and the racial composition of both the qualified and unqualified pool of firefighters seeking a promotion. Rather, the statistical evidence Nash presented involved a comparison between the racial composition of Jacksonville firefighters who passed the promotion exam, a specific employment practice, and those who did not pass. Those statistics showed that only 3 of the 20 blacks who took the exam in 1981 passed, while 57 of the 100 whites who took the exam passed. The district court correctly concluded that these statistics established a prima facie case of disparate impact. See 29 C.F.R. Sec. 1607.4(D).
 
 
 12
 Second, the Supreme Court held that a Title VII plaintiff must "demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." Wards Cove, 109 S.Ct. at 2124. In this case, Jacksonville admits that it refused to promote Nash because of his failure to score 70 or higher on the examination. Moreover, the fact that an examinee's failure to pass the examination absolutely bars promotion satisfies the Court's "specific causation" requirement.
 
 
 13
 Third, the Supreme Court announced a two-phase approach for analyzing Title VII disparate impact claims. The first phase requires a plaintiff to establish a prima facie case of disparate impact with respect to an employment practice. If a plaintiff meets the proof burdens necessary to make out a prima facie case, the case shifts to the second phase. "This phase ... contains two components: first, a consideration of the [business] justifications an employer offers for [its] use of [the challenged practice]; and second, the availability of alternate practices to achieve the same business ends, with less racial impact." Wards Cove, 109 S.Ct. at 2125.
 
 
 14
 Wards Cove primarily involved an examination of the type of statistical evidence a plaintiff must present in order to establish a prima facie case. Because we have determined that the evidence Nash presented does not contain the flaws condemned by the Supreme Court, no further discussion on that subject is necessary.
 
 
 15
 Although Wards Cove was primarily concerned with the type of statistical evidence a plaintiff must present in order to establish a prima facie case, we note that the Supreme Court also relaxed an employer's evidentiary burden by only requiring that the employer produce evidence of a legitimate business justification for an employment practice. See Wards Cove, 109 S.Ct. at 2126. This holding does not affect our conclusion because Jacksonville failed to meet its burden of producing evidence that the exam was job related and served the asserted business justification of promoting the most qualified firefighters to fire lieutenant. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (the evidence produced must be sufficient to raise a genuine issue of material fact).
 
 III. CONCLUSION
 
 16
 Following the Supreme Court's directions, we have reconsidered Nash II in light of Wards Cove and find that the teachings of Wards Cove do not impact upon the type of evidence Nash presented. Accordingly, we reinstate Nash II, 837 F.2d 1534 (11th Cir.1988), and direct the district court to abide by the directions in that case upon the issuance of the mandate in this case.
 
 
 17
 REVERSED and REMANDED with instructions.
 
 
 
 *
 Judge Robert S. Vance heard oral argument in this case prior to the Supreme Court's remand, but due to his death on December 16, 1989, he did not participate in this decision. This case is decided by a quorum. See 28 U.S.C. Sec. 46(d)
 
 
 **
 Honorable Wilbur D. Owens, Jr., Chief U.S. District Judge for the Middle District of Georgia, sitting by designation
 
 
 [1]
 In 1975, Nash scored 84 on the examination but was not promoted
 
 
 [2]
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a), prohibits employers from discriminating against any individual with respect to hiring or the terms and conditions of employment based on that individual's race, color, religion, sex, or national origin; or from adversely limiting, segregating or classifying employees on those grounds. Title VII proscribes "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). It is this latter form of liability based upon practices which are "fair in form" but discriminatory in practice, and known as the "disparate impact" theory, that is involved in this case. Under this theory, an employment practice that has the effect of discriminating in any of the forbidden ways may be found to violate Title VII without evidence of the employer's subjective intent to discriminate
 
 
 [3]
 Jacksonville's expert witness testified that at least 27 of the 97 examination questions had an adverse impact on black examinees (the examination consisted of 100 questions, but 3 of the questions were determined to be defective as to all examinees and were not considered by the fire department in computing examination scores)
 
 
 [4]
 Only Jacksonville's former personnel examiner and current retirement pension manager, who also served as Jacksonville's expert at trial, actually reviewed the examination questions